## U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT

THE STATE OF OREGON, et al.,

    Plaintiffs,

       v.

DONALD J. TRUMP, et al.,

    Defendants.

CASE NO. 26-01472

## DECLARATION OF AMBASSADOR JAMIESON LEE GREER, UNITED STATES TRADE REPRESENTATIVE

I, Ambassador Jamieson Lee Greer, hereby state as follows:

1.     I am the United States Trade Representative and the head of the Office of the United States Trade Representative, a component in the Executive Office of the President. *See* 19 U.S.C. § 2171(a). I have been the United States Trade Representative since February 26, 2025.

2.     The statements made herein are based on my personal knowledge, on information provided to me in my official capacity, reasonable inquiry, and information obtained from various records, systems, component employees, and information portals maintained and relied upon by the United States Government in the regular course of business, and on my evaluation of that information.

3.     The purpose of this declaration is to explain, in my capacity as the principal advisor to the President on international trade policy and the chief representative for the United States in international trade negotiations, that the temporary import surcharge imposed in Proclamation 11012 of February 20, 2026 (Imposing a Temporary Import Surcharge To Address Fundamental International Payments Problems) ("Section 122 Proclamation") should be maintained during the

1

pendency of the United States Government appeal due to its continued importance in preserving our ongoing trade negotiations, bolstering our economic security, and reinforcing the Trump Administration's national security tariffs. If enforcement of the United States Court of International Trade's (CIT) judgments during the pendency of all appeals is not stayed, the United States Government will be required to pay refunds to the importer plaintiffs here—and any other importers who secure similar judgments in the coming days. This outcome will create uncertainty for both foreign trading partners and importers about the Trump Administration's ability to use trade policy to support domestic production and reduce reliance on imports generally, and in national-security-sensitive sectors in particular. It would also signal to financial markets that United States Government has fewer statutory tools than expected to confront long-standing problems in its balance-of-payments position at a time when its net international-investment position is sharply deteriorating.

4.    First, maintaining the temporary import surcharge imposed in the Section 122 Proclamation is critical to ensuring trading partners' continued cooperation in ongoing trade negotiations. Since President Trump announced his global tariff program in April 2025, USTR has obtained significant commitments from trading partners to address structural problems underlying the substantial U.S. trade deficit, which as a subcomponent of the current account, contributes significantly to the large and serious balance of payments problems the United States is currently confronting. More specifically, due only to the leverage generated by President Trump's global tariff program, the United States has negotiated and finalized full Agreements on Reciprocal Trade ("ARTs") with Argentina, Bangladesh, Cambodia, Ecuador, El Salvador, Guatemala, Indonesia, Malaysia, and Taiwan and announced framework deals with the United Kingdom, the European Union, India, Japan, North Macedonia, South Korea, Switzerland, Thailand, and Vietnam. These

2

agreements have done more to eliminate certain persistent tariff and non-tariff barriers to U.S. exports, and thereby achieved more market access for American workers, producers, and service providers, than decades of traditional free trade agreements or multilateral negotiations at the World Trade Organization (WTO). Indeed, U.S. exports of goods and services exceeded $300 billion in each of the first three months of 2026, with each month breaking the record for the highest monthly export figure in American history.

5.     After the Supreme Court issued its decision in *Learning Resources, Inc. et al. v. Trump*, 607 U.S. ___ (2026), which concluded only that the President lacked the authority under the International Emergency Economic Powers Act (IEEPA) to impose new additional tariffs on imports into the United States, and President Trump issued the Section 122 Proclamation, USTR has continued to work intensively with our ART partners to implement those agreements. The temporary import surcharge imposed in the Section 122 Proclamation has incentivized trading partners to continue implementation by underscoring President Trump's determination to address fundamental imbalances in the global trading system with increased tariffs.

6.     Since President Trump issued the Section 122 Proclamation, USTR has also remained engaged in active negotiations with framework deal partners to finalize those agreements. In fact, USTR has scheduled additional negotiating rounds with numerous trading partners before the Section 122 surcharge is set to expire on July 24, 2026. A failure to stay enforcement of the CIT's judgments pending resolution of all appeals would inject uncertainty into those negotiations and significantly reduce trading partner incentives to eliminate barriers. Moreover, since the President announced the Section 122 surcharge, various other trading partners have approached the United States to engage in negotiations to eliminate their trade barriers as well. If

3

certain key trading partners walk away from the table now, these negotiations may never resume, even if higher courts conclude that the temporary import surcharge was lawful.

7.    Second, the Section 122 surcharge enhances U.S. economic security. In line with Section 122 itself, the surcharge aims to address a large and serious U.S. balance-of-payments issue, as evidenced, in part, by the substantial U.S. trade deficit. Left unaddressed, this balance-of-payments issue endangers our ability to finance our spending, erodes investor confidence in our economy, and distresses financial markets.

8.    President Trump's global tariffs program has spurred trading partners to commit hundreds of billions of dollars in greenfield U.S. investments across key sectors, including semiconductors, shipbuilding, energy, and critical minerals, while simultaneously securing increased market access for U.S. exports, as described above. Furthermore, the global tariffs program is designed to reinforce President Trump's domestic policies to increase domestic manufacturing capacity and production, which are already having an impact. In fact, since, the Section 122 tariff took effect on February 24, the manufacturing goods trade deficit decreased by 43.3 percent in March year-over-year, down from $151.4 billion in March 2025 to $85.4 billion in March 2026 (latest information available). In addition, from February 2026, the month the Section 122 surcharge took effect, through April 2026, overall manufacturing employment increased by one percent, as the Institute for Supply Management Manufacturing Purchasing Managers' Index and manufacturing productivity grew at some of the highest levels since January 2023. Thus, the President's tariff strategy, inclusive of the Section 122 surcharge, is having real, beneficial impacts on the U.S. economy.

9.    Third, the Section 122 surcharge supports U.S. national security. The Section 122 action reinforces President Trump's national security tariff program by creating a demand signal for

4

domestic producers, spurring an increase in domestic production of critical manufactured goods and agricultural products, thereby reducing our vulnerability to economic coercion by adversaries and enhancing supply chain resilience in defense-critical sectors.

10.    In sum, if the CIT's decision is not stayed pending appeal, trading partners with whom we have concluded ARTs might abandon implementation of their commitments and ongoing negotiations of future such agreements may cease, while President Trump's policies to promote U.S. economic and national security by expanding domestic production capacity and production may be weakened.  Accordingly, it remains vital to the foreign policy, economy, and national security of the United States for the Court to permit the Section 122 temporary import surcharge to remain in effect.

11.    I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this 11th day of May, 2026.

/s/ _____

Jamieson Lee Greer
United States Trade Representative
Office of the United States Trade Representative

5