**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
THE HONORABLE CLAIRE R. KELLY, JUDGE
THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

_____

|  |  |
|---|---|
| THE STATE OF OREGON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Court No. 26-01472-3JP |
| | ) |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | ) |
| | ) |
| Defendants. | ) |

_____

|  |  |
|---|---|
| BURLAP AND BARREL, INC.; BASIC FUN, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Court No. 26-01606-3JP |
| | ) |
| DONALD J. TRUMP in his official capacity as President of the United States, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF BRANDON LORD**

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1.  I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July, 2022. In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and Section

122 of the Trade Act of 1974, 19 U.S.C. § 2312 ("Section 122"). I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2. On May 7, 2026, the Court declared Proclamation No. 11012, Imposing a Temporary Import Surcharge To Address Fundamental International Payments Problems, 91 Fed. Reg. 9,339 (Feb. 25, 2026) (the "Proclamation"), contrary to law, and permanently enjoined the collection of duties imposed by the Proclamation which invoked the President's authority under Section 122 (the "Section 122 duties"), with respect to three of the plaintiffs: The State of Washington (and its Instrumentalities), Burlap and Barrel, Inc., and Basic Fun, Inc. (the "affected importers"). The Court ordered Defendants to implement the permanent injunction within 5 days.

3. The Court's injunction poses immediate challenges to CBP, the agency tasked with collecting the Section 122 duties pursuant to the Proclamation and implementing the permanent injunction.

4. As of May 7, 2026, 170,885 importers have made over 13 million entries requiring deposits of Section 122 duties.

5. To implement the permanent injunction, CBP must first ascertain the importer of record (IOR) numbers for the affected importers, and will then need to reprogram the Automated Commercial Environment (ACE), CBP's official system of record for imported merchandise, to allow the affected importers to submit entry summaries

2

without declaring a provision of the Harmonized Tariff Schedule of the United States imposing Section 122 duties and depositing the associated Section 122 duties.  CBP received confirmation of the IOR numbers for Burlap and Barrel, Inc. and Basic Fun, Inc., but it is currently waiting for confirmation of the IOR numbers for the State of Washington and its "instrumentalities."

6.  Once ACE has been reprogrammed, CBP will need to manually extend liquidation for each of the affected importers' entries so that the Section 122 duties may be re-assessed if the permanent injunction is overturned on appeal.  If liquidation is not extended, CBP will not be able to reliquidate the entries beyond the 90-day reliquidation period absent a court order.  Extending liquidation is a manual and resource intensive process.

7.  Should additional plaintiffs file actions and the Court's injunction be applied to their imports, CBP will need to ascertain all affected IOR numbers, continually modify the ACE programming as outlined above, and manually extend each importers' affected entries; a process that will become increasingly unworkable should additional IORs be covered, given that more than 13 million entry summaries have been filed with Section 122 duties to date.

8.  If the permanent injunction is overturned on appeal, CBP may not be able to retroactively collect the outstanding Section 122 duties.  For entries which CBP is enjoined from collecting Section 122 duties that it subsequently is able to liquidate or reliquidate with Section 122 duties, should a final decision in this matter uphold those tariffs, CBP would face significant risk that bills issued upon such liquidations or reliquidations would go unpaid.  Although importers are required to maintain a continuous bond to cover unpaid bills, CBP's general continuous bonding formula is the greater of $50,000 or 10% of the duties, taxes, and fees paid by the importer in the

preceding 12 months, and thus would not likely cover the full amount of Section 122 duties subsequently assessed.  Such bonding is intended for normal circumstances where estimated duties are usually deposited as required by 19 U.S.C. § 1505(a), and where the nonpayment of any estimated duties is a rare and/or unexpected occurrence.

9. Further, although CBP can extend liquidation of formal entries, the agency cannot do so for informal entries which liquidate immediately upon payment or release in accordance with 19 C.F.R. § 159.10(a).  Thus, CBP may not be able to collect outstanding Section 122 duties on informal entries that are outside the 90-day reliquidation period if the permanent injunction is overturned.

10. This risk of unpaid bills and lost revenue would be exacerbated if the Court's injunction was applied to additional importers given the number of entries that have been filed with a deposit of Section 122 duties to date.

11. CBP's experience with processing refunds of tariffs imposed under the International Emergency Economic Powers Act (IEEPA) after the Supreme Court's decision holding that such tariffs were unlawfully imposed demonstrates that CBP can effectively and efficiently process refunds as needed if the affected plaintiffs prevail at the conclusion of litigation through all appeals.  As further detailed in my declarations filed in *Euro-Notions Fla., Inc. v. United States*, Ct. No. 25-00595, CBP developed the necessary functionality and promptly began processing refunds after the Supreme Court issued its final decision.

12. Absent a stay of this Court's order pending appeal in this case, CBP will be required to divert resources from the IEEPA tariff refund processing effort to develop, test, monitor, and administer new functionality in ACE.  Indeed, CBP is still engaged in the early stages of processing IEEPA tariff refunds through the new Consolidated Administration

4

and Processing of Entries (CAPE) functionality in ACE, and substantially all of its available resources are currently dedicated to maintaining and improving this functionality. After the initial deployment of the new ACE programming to implement the injunction with respect to the affected importers, the agency's continued compliance would require it to constantly update the ACE programming to maintain a potentially expanding list of importers for whom estimated duty deposits for the contested Section 122 duties would not be due, pending appeal.

Executed this 11th day of May, 2026.


Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

5