IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

Before Honorable Mark A. Barnett, Chief Judge, Honorable Claire
R. Kelly, Judge, and Honorable Timothy C. Stanceu, Senior Judge

| | |
|---|---|
| BURLAP AND BARREL, INC. *and* BASIC FUN, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States;* et al., <br><br> Defendants. | Case No. 26-01606 |

**Plaintiffs' Response in Opposition to Defendants' Motion
for a Stay of Enforcement of Judgment Pending Appeal**

# Table of Contents

Table of Authorities ................................................................................................ ii

Introduction ..........................................................................................................1

Legal Standard.......................................................................................................1

Argument ...............................................................................................................2

    I.     Plaintiffs will suffer irreparable harm if a stay is granted. ..........................2

    II.    The Government will not suffer irreparable harm........................................6

    III.   The public interest will be harmed if the stay is granted. .........................12

    IV.   Defendants have failed to make a strong showing that they are likely to succeed on the merits on appeal.......................................................13

Conclusion............................................................................................................15

Certificate of Compliance ...................................................................................17

Proposed Order.....................................................................................................18

# Table of Authorities

**Cases**

*Ala. Ass'n of Realtors v. HHS,*
  594 U.S. 758 (2021) .................................................................................... 6

*Am. Signature, Inc. v. United States,*
  598 F.3d 816 (Fed. Cir. 2010) ................................................................... 13

*Biden v. Nebraska,*
  600 U.S. 477 (2023) .................................................................................... 8

*Celsis in Vitro, Inc. v. CellzDirect, Inc.,*
  664 F.3d 922 (Fed. Cir. 2012) ................................................................... 4

*Doe v. Trump,*
  284 F. Supp. 3d 1172 (W.D. Wash. 2018)................................................. 12

*In re Section 301 Cases,*
  524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ........................................... 13

*Learning Res., Inc. v. Trump,*
  146 S. Ct. 628 (2026) ..................................................................... 5, 11, 13

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024) .................................................................................. 14

*Nken v. Holder,*
  556 U.S. 418 (2009) ................................................................................ 1, 9

*United States v. U.S. Coin & Currency,*
  401 U.S. 715 (1971) .................................................................................... 6

**Constitutional Provision**

U.S. Const. art. I, § 8 ................................................................................ 7, 13

**Statute**

19 U.S.C. § 2132(a)......................................................................................... 7

**Rules**

USCIT R. 56(f)............................................................................................... 15

USCIT R. 62................................................................................................... 11

**Other Authority**

Donald J. Trump, Truth Social Post (May 10, 2026) ................................... 4

## Introduction

This Court held that Congress intended a specific meaning to the phrase "balance-of-payments deficits" when it enacted Section 122 of the Trade Act of 1974—a meaning the President ignored in Proclamation No. 11012. Because no qualifying balance-of-payments deficit exists, the tariffs imposed under Section 122 are unlawful. Defendants seek a stay of this Court's order pending appeal, claiming the injunction undermines the President's trade agenda.

But the President is not harmed by the denial of authority he does not lawfully possess, nor is he harmed by courts holding him to the statutory requirements Congress imposed. And a stay would cause irreparable harm to Plaintiffs and undermine the public interest in the Government acting lawfully within the scope of the power Congress has delegated. Further, Defendants are unlikely to prevail on appeal. Defendants' motion for a stay should be denied.

## Legal Standard

A stay depends on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation and citation omitted). These factors substantially overlap with the factors governing preliminary injunctions "because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Id.* at 434.

1

**Argument**

All four factors that this Court considers when addressing a motion for a stay pending appeal favor denying the stay. Most importantly, Plaintiffs will suffer irreparable harm if a stay is granted. Denying a stay will cause no irreparable harm to Defendants, whereas granting a stay would harm the public interest. And Defendants are unlikely to succeed on the merits of their appeal because Section 122 does not give the President the power to impose tariffs simply in response to a trade deficit.

**I.    Plaintiffs will suffer irreparable harm if a stay is granted.**

Plaintiffs[1] address irreparable harm first because it is the most important factor here. They have shown that the irreparable harm caused by the President's unlawful tariffs goes well beyond the mere payment of tariffs. *See* Compl., ECF No. 2, ¶¶ 77–93; Pls.' Mot. Prelim. Inj. and/or Summ. J. ("Pls.' MSJ"), ECF No. 11, at 35–38, Exs. A–B; Pls.' Reply Br. in Support of Prelim. Inj. and Mot. Summ. J. ("Pls.' Reply"), ECF No. 22, at 25–26. The procedural history underscores the urgency of those harms. Plaintiffs filed their Motion for Preliminary Injunction and/or Summary Judgment for Permanent Injunction shortly after initiating this lawsuit. This Court set an expedited schedule, requiring a response in 21 days, a reply in four, and a hearing three days later. ECF No. 8. This Court then entered judgment

---

[1] Unless otherwise noted, the term "Plaintiffs" refers to the plaintiffs in *Burlap and Barrel et al. v. Trump et al.*, Case No. 26-01606.

granting summary judgment and a permanent injunction in favor of Plaintiffs within weeks of oral argument. *See* Slip Op., ECF No. 38; Judgment, ECF No. 39.

Defendants assert that a stay would subject Plaintiffs only to monetary harm from paying tariffs and that Plaintiffs "will receive payment on their refund with interest, if any when ordered by the courts." Mot. Stay 11–12. But that characterization ignores both the record and this Court's decision to grant injunctive relief. The record shows that Plaintiffs will suffer irreparable harm if the Section 122 tariffs continue.

The tariffs will continue to force Plaintiff Burlap & Barrel to reduce investment by scaling back hiring, shipping, and corrugated packaging. Pls.' MSJ 36. They have forced Burlap & Barrel to pause innovation, new product development, new partnerships, and special projects. *Id.* To offset the continuing tariffs, Burlap & Barrel will need to consider price increases, threatening its market position and damaging its reputation with customers. *Id.* at 36–37. These operational disruptions—including inventory shortages, supply chain instability, and the loss of long-term partners and contracts—constitute damages that cannot be undone by a later refund. *Id.* at 37; Pls.' Reply 26.

Similarly, Basic Fun! will be irreparably harmed by the continued imposition of Section 122 tariffs. It cannot raise prices without jeopardizing its market position. Pls.' Reply 26. The tariffs have already reduced its profit margins, increasing its risk of breaching loan covenants, which in turn could trigger costly renegotiation of its financing. Pls.' MSJ 37. Basic Fun! has delayed or canceled potential

acquisitions and growth opportunities, stopped hiring, reduced bonuses, and limited new investments. *Id.* These constraints on growth, financing, and operations are not recoverable through a later refund.

These losses—lost business opportunities, reputational damage, and loss of goodwill—are precisely the kind that cannot be addressed by money alone. *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). This Court recognized as much in granting an injunction rather than merely ordering a refund. Slip Op. 50–51 ("economic harm to Importer Plaintiffs takes several forms" including "lost profits and damage to business relationships, investments, and innovation"). Defendants' motion does not meaningfully engage with these harms and offers no evidence to rebut Plaintiffs' showing of irreparable injury.

Further, there is reason to doubt Defendants' assurance about refunds. In moving for—and receiving—a stay in the IEEPA litigation, Defendants repeatedly represented that refunds would be available if the IEEPA tariffs were ultimately struck down. But after the Supreme Court invalidated those tariffs, Defendants attempted to delay refunds.[2] In *V.O.S. Selections, Inc. v. Trump*, the Government opposed an immediate issuance of the mandate and instead asked the Federal

---

[2] After the Supreme Court invalidated the IEEPA tariffs, the President publicly criticized the resulting refunds and asserted that the Court "could have solved that situation with a 'tiny' sentence" providing that "[a]ny money paid by others to the United States does not have to be paid back." Donald J. Trump, Truth Social Post (May 10, 2026), available at https://truthsocial.com/@realDonaldTrump/posts/116552659719497289. Those statements further undermine Defendants' assurances that refunds will be promptly and reliably issued if Plaintiffs ultimately prevail.

Circuit to "withhold issuance of the mandate for 90 days to allow the political branches an opportunity to consider options." Opp. Mot. Immediate Issuance of Mandate and Cross-Motion to Stay the Mandate, No. 25-1812, ECF No. 171 at 3 (attached as Exhibit A). The Government also informed this Court that "next steps" were still under consideration "including the mechanics and scope of refunds, potential settlements, and case management," and argued that injunctive relief affecting liquidation/refund administration would be "premature." Defs.' Resp. in Opp'n at 9, *Atmus Filtration, Inc. v. United States*, Ct. No. 26-01259 (Ct. Int'l Trade Mar. 2, 2026), ECF No. 14 (attached as Exhibit B).

In *Atmus*, CBP declared that it continued to liquidate entries with IEEPA duties, had not issued refunds of IEEPA duties as a result of post-*Learning Resources* liquidations, and had not instructed personnel to cease liquidating entries with IEEPA duties applied. Decl. of Brandon Lord, at 2–3, *Atmus Filtration*, Ct. No. 26-01259 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 19 (attached as Exhibit C). When this Court ordered liquidation/reliquidation "without regard to" IEEPA duties, CBP responded that it was "not able to comply" immediately and that it could not prevent additional liquidations, citing system constraints and the need for extensive manual intervention. Decl. of Brandon Lord at 5–11, *Atmus Filtration*, Ct. No. 26-01259 (Ct. Int'l Trade Mar. 6, 2026), ECF No. 31 (attached as Exhibit D). CBP's proposed solution—building a new refund tool ("CAPE")—contemplated phased implementation, delays, and limits on which entries could be processed. Decl. of Brandon Lord Responding to March 20, 2026 Court Order ¶¶ 7–8, 15(b), 16(f),

*Atmus Filtration*, Ct. No. 26-01259 (Ct. Int'l Trade Mar. 31, 2026), ECF No. 51 (attached as Exhibit E). "As that experience shows, . . . there may be significant delays from the time the imposition of tariffs are first held unlawful before refunds are effectuated." Slip Op. 50 n.40. Even after a definitive judicial ruling, refunds may be delayed for months.

A stay would irreparably harm Plaintiffs. Defendants' suggestion that refunds with interest would fully remedy those harms is incorrect as a matter of law and fact.

## II.     The Government will not suffer irreparable harm.

The Government is not harmed by an injunction preventing it from imposing unlawful tariffs because "[o]f course the government has no legitimate interest in upholding an unconstitutional system." *United States v. U.S. Coin & Currency*, 401 U.S. 715, 726 (1971) (Brennan, J., concurring). Nor does the existence of policy objectives create irreparable harm where the underlying action is unlawful; "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021).

Defendants continue to rely on their rejected interpretation of Section 122 to further their foreign policy and national security goals. Mot. Stay 5. Defendants argue that "[t]he President has determined that the balance-of-payments deficit he identified significantly harms U.S. national interests, including economic and national security interests." *Id.* But this Court held that the President's "use of trade and current account deficits to stand in the place of balance-of-payments deficits within the meaning of the statute renders the Proclamation *ultra vires*," and

"the tariffs imposed on Plaintiffs are unauthorized by law." Slip Op. 46 (emphasis in original). Section 122 is not triggered by generalized appeals to "economic and national security interests." Rather, it applies only when "fundamental international payments problems require special import measures to restrict imports . . . to deal with large and serious United States balance-of-payments deficits." 19 U.S.C. § 2132(a)(1).

Defendants assert that the injunction "constitutes an enormous intrusion on the President's conduct of foreign affairs and efforts to address the rapidly deteriorating balance-of-payments position of the United States." Mot. Stay 5. But enforcing a statute as written is not an "intrusion." The President has no independent constitutional authority to impose tariffs, regardless of whether he characterizes them as foreign affairs or national security. The Constitution vests Congress with the exclusive power to lay and collect duties and imposts. U.S. Const. art. I, § 8, cl. 1. Congress delegated that power to the President only under certain limited conditions—specifically, "to deal with large and serious United States balance-of-payments deficits." 19 U.S.C. § 2132(a)(1). This Court held that the President's interpretation of a balance-of-payments deficit does not satisfy the meaning of Section 122. A balance-of-payments deficit is a necessary precursor to the President's exercise of tariff authority under the statute, and this Court correctly determined that a balance-of-payments deficit is "measured by liquidity, official settlements and the basic balance" as Congress intended. Slip Op. 45.

7

The President's claim that imposing tariffs pursuant to Section 122 is necessary to "remedy our longstanding trade deficit," Mot. Stay 2, rests on that same flawed interpretation. A balance-of-payments deficit is not the same as a trade deficit. Slip Op. 42. And Section 122 authorizes tariffs only for 150 days—far too short a period to "remedy" a longstanding trade deficit. The Court need not defer to the President merely because he invokes "foreign affairs" and "national security." Mot. Stay 7. The President cannot exercise powers beyond those Congress delegated merely by invoking foreign affairs or national security. *See, e.g., Biden v. Nebraska*, 600 U.S. 477, 494 (2023) (holding that the Secretary of Education does not have authority to cancel $430 billion of student loan principal under the HEROES Act—a statute enacted to address national security crises—by deeming it necessary in connection with a national emergency). Tariff authority rests with Congress, and if broader authority is necessary, the President must seek it from Congress.

Historical practice further undermines the President's reading: no prior administration has interpreted Section 122 to authorize tariffs based on a trade deficit. Moreover, this Court should be skeptical of the Government's claimed urgency given that the President invoked Section 122 only after the Supreme Court invalidated the IEEPA tariffs.[3] Although Section 122 directs the President to act

---

[3] During the IEEPA litigation, the President took the opposite position, representing to the Federal Circuit that he lacked authority to impose tariffs under Section 122 to deal with a trade deficit. *See* Reply Resp. for Appellants, *V.O.S. Selections, Inc. v. Trump*, Fed. Cir. No. 25-1812, at 13. Defendants' sudden reversal further undermines their current interpretation and their claim of irreparable harm.

when large and serious balance-of-payments deficits exist, the President took no action until his preferred IEEPA tariffs were declared unlawful. That timing undercuts the claim that Section 122 is being used to address an urgent, independent crisis rather than as a substitute for authority the President lacks.

Defendants complain that the injunction, if not stayed, "will disrupt ongoing negotiations that seek to address the balance-of-payments issues the United States is facing." Mot. Stay 6. But this scenario is speculative, and one of the President's own making. Speculative or hypothetical injuries do not constitute irreparable harm. *Nken*, 556 U.S. at 434–35 (a "possibility" of irreparable injury is insufficient). The President cannot act illegally as a matter of policy convenience, be ordered to stop, and then claim reliance on that same conduct as a basis for equitable relief. Moreover, a stay would not significantly enhance the President's negotiating position or his leverage. It would not erase the judgment; foreign counterparts are aware that the tariffs have been held unlawful and may not endure. And the consequences to the President's negotiating position would be much greater if this Court issued a stay and the Court of Appeals later affirmed, because U.S. credibility would suffer still greater damage after months of additional negotiations based on an unlawful premise. In any event, the injunction applies only to Plaintiffs and the State of Washington. And Section 122 tariffs only last for 150 days unless extended by Congress—a fact well known to any sophisticated trading partner of the United States.

Defendants claim that the temporary nature of the Section 122 tariffs creates an injury if the injunction stands because the Government "faces real risk that it may not be able to recover all the lost import-restricting effect of a temporary measure after the statutory period has run." Mot. Stay 7. But this argument does not withstand scrutiny on its own terms. Defendants assert that "premature removal of the surcharge would usher in a flood of imports that characterized the pre-global tariff landscape," Mot. Stay 6, yet it fails to explain why that same "flood" would not occur when the tariffs expire naturally in ten weeks. Indeed, Defendants' assertion that "[o]nce goods enter the United States in higher volumes, the import-restricting effect of the temporary surcharge for that period is lost," Mot. Stay 7, underscores the inadequacy of Section 122 as the President's chosen remedy for a trade deficit. The result would be the same if the Section 122 tariffs expired on their own terms; therefore, Defendants cannot show irreparable injury from enjoining them now.

Defendants' concern that they may not recover refunded duties—or may be unable to collect duties that could have been collected during the remaining weeks of Section 122's statutory period—if they prevail on appeal, Mot. Stay 7–9, without more, does not constitute irreparable injury. If the temporary nature of a statute were enough to establish irreparable harm, then any time-limited unlawful action could evade meaningful judicial review. Furthermore, Defendants argue that their "limited resources" will be diverted by the injunction, Mot. Stay 5, and that a stay is necessary to protect the "public fisc" from "irrecoverable funds," Mot. Stay 12. But this rhetoric assumes the issuance of future injunctions to hypothetical plaintiffs

10

not before this Court. A motion for a stay must address the injunction actually issued—not one the Government fears might be issued in other cases. Because the current injunction applies only to these Plaintiffs and the State of Washington, the sums at issue are modest and represent no threat to the public fisc.

The Government's passing suggestion that an automatic stay applies under USCIT Rule 62(e) fails. First, the judgment here is primarily injunctive—it declares the Proclamation invalid and enjoins enforcement—and the refund component is ancillary relief, not a freestanding money judgment. Second, the Government relies on an unpublished dissent from an order denying a stay—authority that is neither binding nor persuasive. Mot. Stay 8.

Defendants next argue that the Court's injunction will hinder CBP's ability to function because of the effort required to update its systems. Mot. Stay 9. But Plaintiffs have already provided the requested information. *Id.* And Defendants' concerns about a potential cascade of future plaintiffs seeking the same relief are irrelevant: this injunction applies only to these Plaintiffs and the State of Washington.[4] Hypothetical future cases do not bear on CBP's ability to comply with the injunction actually issued.

Defendants argue that the injunction will interfere with their ability to implement the Supreme Court's decision in *Learning Resources*. Mot. Stay 10–11.

---

[4] Defendants' concern regarding the possibility of "hundreds, if not thousands, of plaintiffs to this Court to seek similar relief," Mot. Stay 9, is a problem of their own making. Having successfully opposed a universal injunction, Defendants cannot now rely on the administrative burden of individual suits as a basis for a stay.

11

But the Government cannot use its own delay in refunding previously invalidated tariffs as a justification to continue imposing new, separate, and equally unlawful ones.

Defendants' claimed injuries are either speculative, self-inflicted, or at most administrative inconveniences that do not rise to the level of irreparable harm. Because the Government has no legitimate interest in the continued enforcement of an ultra vires proclamation—and no equitable basis to use such tariffs as diplomatic leverage—this factor weighs heavily against a stay.

III.    **The public interest will be harmed if the stay is granted.**

While it is true that "[t]he public interest requires that the President be able to take all appropriate and feasible action to swiftly address identified threats to the United States' economy, military preparedness, and national security," Mot. Stay 12, this Court found that Defendants' actions were unlawful under Section 122. Slip Op. 46. The Proclamation failed to identify any "balance-of-payments deficits within the meaning of Section 122 as it was enacted in 1974," relying instead on trade and current account deficits. Slip Op. 46 (citations omitted).

Although the Government has a "compelling" interest in national security, "Defendants cannot simply rely on unspecified security concerns." *Doe v. Trump*, 284 F. Supp. 3d 1172, 1179 (W.D. Wash. 2018). The Government's characterization of the emergency as "circumstances that have atrophied the domestic manufacturing industry," Mot. Stay 12, describes a gradual, decades-long process—not a sudden crisis or the kind of "extraordinary" threat Section 122 was designed to address. Nor does invoking national security expand the President's statutory

12

authority. The President has no independent authority to impose tariffs, regardless of how important they might be to national security, the economy, or military preparedness. *See* U.S. Const. art. I, § 8, cl. 1; *Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 638 (2026).

The public interest favors allowing the injunction to take effect. A stay would prolong the very harms this Court has already found warrant injunctive relief. Granting a stay would subject Plaintiffs—and by extension, American consumers— to higher costs and supply chain instability resulting from an unlawful tax that this Court has already set aside. Contrary to Defendants' suggestion, Mot. Stay 12, a stay would not preserve the status quo; it would perpetuate a state of illegality. The relevant status quo is the legal landscape that existed before the President's ultra vires Proclamation. "The issuance of an injunction does not undermine [the public] interest, it merely maintains the status quo," *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1372 (Ct. Int'l Trade 2021). Here, that status quo is the absence of Section 122 tariffs. "The public interest is served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly." *Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010).

## IV. Defendants have failed to make a strong showing that they are likely to succeed on the merits on appeal.

Defendants largely repackage arguments this Court has already rejected in an effort to show a likelihood of success on appeal. Defendants once again argue that the President's interpretation of the phrase "balance-of-payments deficit" leaves room for presidential discretion that the Court should defer to. But even though the

13

phrase "causes some confusion," Slip Op. 32 n.26, "a court is not somehow relieved of its obligation to independently interpret the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). This case does not involve judicial second-guessing of economic policy. It involves statutory interpretation—specifically, whether Section 122 authorizes tariffs based on the deficits identified in the Proclamation.

Defendants would like their version to control, since "if the President has the ability to select among the sub-accounts to identify a balance-of-payments deficit, unless every sub-account is balanced, the President would always be able to identify a balance-of-payments deficit." Slip Op. 39. But despite Defendants' contention that this Court "relied on weak legislative history," Mot. Stay 14, this Court's opinion thoroughly searched the contemporary legislative and global financial histories for Congress's understanding of the phrase in 1974 when Section 122 was passed. By contrast, Defendants' interpretation of "balance-of-payments deficit" relies on no statutory text or legislative history and has no coherent limiting principle. Rather, according to Defendants, that term means whatever the President wants it to mean, "within an economically reasonable understanding of that phrase," Mot. Stay 14, with no meaningful judicial constraint, *see* Defs.' Resp. MSJ, ECF No. 16, 17–22. As this Court correctly explained, "Section 122 would lack an intelligible principle if this President could simply identify any deficit account, or if the phrase 'balance-of-payments deficits' could change with context." Slip Op. 40 n.33.

14

Defendants' assertion that the Federal Circuit is likely to disagree with this Court's interpretation of Section 122 is unsupported. They identify no binding precedent adopting their interpretation, nor any clear error in this Court's reasoning. Their disagreement reflects a preference for broader executive authority, not a legal basis for reversal.

The Government's reliance on the dissent does not help its likelihood-of-success argument. Judge Stanceu's dissent does not adopt the Government's interpretation of "balance-of-payments deficits" or conclude that the Proclamation was lawful. Rather, the dissent would have denied summary judgment on procedural grounds—arguing the majority should have provided additional notice under Rule 56(f) before deciding the case on the specific interpretive grounds it adopted. But the majority directly addressed and rejected that concern, finding that both the parties' briefing and oral argument gave Defendants full notice of the statutory interpretation issues this Court resolved. Slip Op. 44 n.37. The mere existence of a dissent does not establish a serious legal question, particularly where the disagreement concerns a point of procedure rather than the merits.

Defendants have not made the strong showing of a likelihood of success on appeal necessary to justify a stay.

### Conclusion

Defendants' motion for a stay should be denied. Plaintiffs will be irreparably harmed by a stay. Defendants will not be harmed without a stay. And Defendants have not made a strong showing that they are likely to succeed on appeal. This Court's ruling should be permitted to go into effect. A proposed order is attached.

Dated: May 19, 2026

Respectfully submitted,

/s/ Jeffrey M. Schwab

Jeffrey M. Schwab
Reilly Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

16

## Certificate of Compliance

I, Jeffrey M. Schwab, hereby certify that this brief complies with the 5,000-word limitation set forth in the Court's May 13, 2026, Order, ECF No. 57, because this brief contains 3,931 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

Respectfully submitted

Dated: May 19, 2026

/s/ Jeffrey M. Schwab

17

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

Before Honorable Mark A. Barnett, Chief Judge, Honorable Claire
R. Kelly, Judge, and Honorable Timothy C. Stanceu, Senior Judge

| | |
|---|---|
| BURLAP AND BARREL, INC. *and* BASIC FUN, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *in his official capacity as President of the United States;* et al.,<br><br>Defendants. | Case No. 26-01606 |

**Proposed Order**

Upon consideration of Defendants' motion for a stay of the enforcement of judgments entered May 7, 2026, to permanently enjoin the United States from collecting tariffs from Plaintiffs pursuant to Proclamation No. 11012, and after due deliberation, it is hereby

ORDERED that Defendants' motion is DENIED.

_____
JUDGE

Dated: _____

18