Plaintiffs' Response in Opposition to Defendants' Motion
for a Stay of Enforcement of Judgment Pending Appeal

# Exhibit B

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |  |
|---|---|---|
| ATMUS FILTRATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Court No. 26-01259 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, U.S. CUSTOMS AND | ) | |
| BORDER PROTECTION, and RODNEY S. | ) | |
| SCOTT, in his official capacity as Commissioner | ) | |
| of U.S. Customs and Border Protection, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Upon consideration of plaintiff's motion for a temporary restraining order and

preliminary injunction, defendants' response, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED.


Dated:_____          _____
      New York, New York                          SENIOR JUDGE

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| ATMUS FILTRATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Court No. 26-01259 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, U.S. CUSTOMS AND | ) | |
| BORDER PROTECTION, and RODNEY S. | ) | |
| SCOTT, in his official capacity as Commissioner | ) | |
| of U.S. Customs and Border Protection, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff, Atmus Filtration, Inc., moves for a temporary restraining order and preliminary injunction to suspend liquidation of its entries on which it paid duties imposed under the International Emergency Economic Powers Act (IEEPA).  ECF No. 3 (Mot.).  Plaintiff has not carried its burden to establish its entitlement to those extraordinary remedies.  At the same time, it claims that this Court's urgent intervention is needed, it admits it has been paying IEEPA duties for 12 months, and it concedes that its entries involving IEEPA duties began liquidating more than two months ago.  The Chief Judge of this Court entered an administrative order months ago imposing automatic stays in cases like this one.  In the face of its delay, Plaintiff attempts to circumvent the process this Court has set.  Defendants have already explained elsewhere the unworkability of an injunction against suspension of liquidation.  And none of the parties disputes that this Court has the authority to order reliquidation.  Plaintiff's motion, which was filed without even attempting to obtain Defendants' position, should be denied.

2

**BACKGROUND**

A.      After taking office, President Trump invoked the International Emergency Economic Powers Act, 50 U.S.C. § 1702, in imposing various duties.  *See*, *e.g.*, Executive Order 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025); Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025).  A panel of this Court held that IEEPA did not authorize the challenged tariffs and permanently enjoined "the operation of the Challenged Tariff Orders."  *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350,1384 (C.I.T. May 28, 2025).  The Government appealed, and the Federal Circuit affirmed this Court's conclusion that the challenged tariffs exceeded the President's authority under IEEPA while vacating this Court's universal injunction.  *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025) (en banc).

After the Government appealed, the Chief Judge of this Court issued an administrative order "[t]o facilitate the administration of new cases that continue to be filed challenging the imposition of tariffs under [IEEPA]."  Administrative Order 25-02.  Under that order, "[a]ll currently unassigned cases and new cases . . . arising from and seeking relief relating" to IEEPA tariffs "and which invoke the court's jurisdiction under 28 U.S.C. § 1581(i) . . . shall be stayed upon commencement and without further action by the court."  *Id.*  "Any party seeking to lift the stay before the court does so *sua sponte* must provide good cause indicating why their case merits earlier consideration."  *Id.*

The Supreme Court recently held that IEEPA does not include the power to impose tariffs.  *Learning Resources, Inc. v. Trump*, 2026 WL 477534, at *14 (U.S. Feb. 20, 2026).  The

Federal Circuit just issued its mandate today, March 2, 2026.  No. 35-00066, ECF 73.

B.	Plaintiff alleges it is an importer of merchandise and alleges it has paid about $11 million in duties imposed under IEEPA.  ECF No. 2 at ¶ 9 n.2.  Plaintiff claims it started paying IEEPA tariffs 12 months ago in March 2025.  ECF No. 2 at Ex. A.  It further alleges that entries for which it paid IEEPA tariffs began liquidating as early as December 15, 2025.  ECF No. 2 at ¶ 7.  Yet it commenced this action more than two months after that date, on February 27, 2026.  ECF No. 2.  On the same day it filed its complaint, Plaintiff filed a motion for an ex parte temporary restraining order and preliminary injunction seeking an injunction suspending liquidation of its unliquidated duties.  ECF No. 3.  This Court entered an order directing the Government to file a response "limited to suspension of liquidation . . . on or before March 2, 2026."  ECF No. 9.

**STANDARD OF REVIEW**

Whether in the form of a temporary restraining order or a preliminary injunction, emergency injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis added).  A plaintiff must show (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in" their favor, and (4) "that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *see Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014); *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019); *U.S. Auto Parts Network, Inc. v. United States*, 307 F. Supp. 3d 1373, 1377 (Ct. Int'l Trade 2018).  A plaintiff who cannot show irreparable harm "cannot be granted" preliminary relief.  *Amazon.com, Inc. v.*

*Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

### ARGUMENT

**I.      Plaintiff Cannot Establish Likelihood of Immediate, Irreparable Harm**

Plaintiff has not carried its burden of establishing irreparable harm necessary for a temporary restraining order or preliminary injunction. "A plaintiff seeking a [temporary restraining order or] preliminary injunction must establish that . . . he is *likely* to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20 (emphasis added).[1] The Supreme Court has recognized that a "possibility" of irreparable harm is insufficient. *Id.* at 22. Yet Plaintiff never argues that it is *likely* to face irreparable harm because of an inability of the Court to order reliquidation. On the contrary, Plaintiff contends that this remedy *is* available to it. Its complaint expressly seeks reliquidation as a remedy. ECF No. 2 at 12. And Plaintiff acknowledges that Defendants have recognized the Court's authority to order reliquidation in similar cases. ECF No. 3 at 4 n.3. None of the parties disputes this Court's authority to order reliquidation where an IEEPA tariff has been wrongly imposed and the importer of record is not time barred to contest the liquidation. And this Court has concluded that it has the authority to order reliquidation of non-time-barred entries of IEEPA tariffs. *AGS Co. Auto. Sols v. U.S. Customs and Border Protection*, No. 25-255, 2025 WL 3634261 (Ct. Int'l Trade 2025).

---

[1] Specifically, for a temporary restraining order, the plaintiff must show likely irreparable harm before a court could rule on a preliminary injunction. *See, e.g.*, *A&W X-Press, Inc. v. FCA US, LLC*, 2022 WL 2759872, at *3 (6th Cir. July 14) (A temporary restraining order's "purpose" is to give "a court time to determine whether a preliminary injunction is warranted."); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (Temporary restraining orders and preliminary injunctions perform "different functions."); *Shenzhen Root Tech. v. Chiaro Tech.*, 2023 WL 3937394, at *3 (W.D. Wash. May 17, 2023) ("Plaintiff has not demonstrated that the harms asserted are so immediate and irreparable that they will occur in the period between this order and a future preliminary-injunction hearing." (cleaned up)).

In arguing against itself and Defendants, Plaintiff suggests that the preliminary injunction ordered in *In Re Section 301 Cases* would be appropriate here.  But Plaintiff wrenches the Court's order out of context and ignores that there the Government had initially contested reliquidation's availability and that suspension of liquidation was neither required nor effectuated.  *See, e.g.*, *Brown v. Davenport*, 596 U.S. 118, 141 (2022) (emphasizing that "the language of an opinion is not always to be parsed as though … [it is] the language of a statute" but must be read in "context" (cleaned up)); *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023) ("our opinions dispose of discrete cases and controversies and they must be read with a careful eye to context").  Plaintiff also insists that, "following liquidation, importers can lose the legal right to recover duty refunds," relying on *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).  Mot. 6.  But the consequences of liquidation in *Target* derived from different statutes.  *Target* arose under 28 U.S.C. § 1581(c), then § 1581(a).  *This* case arises under 28 U.S.C. § 1581(i).  The Court's remedial authority does not derive from the provisions that govern agency liquidation errors.  The Court's authority instead permits it to "order any other form of relief that is appropriate in a civil action, including but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." 28 U.S.C. § 2643(c)(1).  There is thus no prohibition against an order requiring CBP to reliquidate entries in this case, as a means of effectuating a ruling that the challenged tariffs are invalid, should the Court ultimately decide to issue such an order.  *See Shinyei Corp. of America v. United States*, 355 F.3d 1297, 1312 (2004) ("we decline to find that the statute as a whole was intended to preclude judicial enforcement of court orders after liquidation").

In alleging irreparable harm, Plaintiff has not offered any reason other than the possibility that it,  Defendants, and this Court might have been wrong about reliquidation's availability as a

remedy in this case.  For all the reasons above, Plaintiff faces no irreparable harm, and that alone is sufficient to deny the application.  *See Amazon.com*, 239 F.3d at 1350; *AGS*, 2025 WL 3634261, at *3.

## II.     The Balance of Hardships and Public Interest Favor Defendants

The balance of hardships and public interest only underscore why the Court should deny Plaintiff's motion.  Defendants face a very real hardship from an injunction suspending liquidation.  Although Plaintiff requests suspension of only its own entries, if the requested injunction is granted, hundreds if not thousands of plaintiffs would likely seek the same remedy. *See, e.g.*, *Hanson v. D.C.*, 120 F.4th 223, 247 (D.C. Cir. 2024) (prospect of follow-on lawsuits counsel against preliminary relief).  Plaintiff repeatedly mischaracterizes this hardship to the Government as "minor" and "minimal" (while offering no support for those mischaracterizations).  Mot. 3, 7.  Much to the contrary, CBP has already explained the significant hardship posed by the relief Plaintiff requests.  *See AGS Company Automotive Solutions v. U.S. Customs & Border Protection*, No. 1:25-cv-255, ECF No. 25-1 (C.I.T.) (Declaration of Brandon Lord).  As of December 10, 2025, approximately 34 million entries had been filed by over 301,000 importers that were subject to the IEEPA duties challenged in the Supreme Court.  *Id.* ¶ 3.  Approximately 19.2 million remained unliquidated as of December 10, 2025.  *Id.*   Should CBP be enjoined from liquidating entries subject to the challenged IEEPA orders, it would be tasked with managing an injunction of unprecedented scale and scope.  *Id.* ¶ 4.  CBP's current system lacks the functionality to automatically prevent the liquidation of these entries, and CBP would be forced to undertake a highly labor-intensive process that would require significant resources.  *Id.*  Moreover, approximately 19.8 million of the entries were filed as informal entries under 19 C.F.R. part 143 (regulations promulgated pursuant to 19 U.S.C.

§ 1498(a)(1)(A)), and because dutiable informal entries liquidate immediately upon payment by the importer of the duties due upon the entry, CBP does not have a process to prevent the liquidation of informal entries.  CBP Decl. ¶ 3; 19 C.F.R. § 159.10(a)(1).

CBP faced similar constraints in 2021, when it explained the impossibility of suspending liquidation on the vast scale required by *In re Section 301 Cases*, which in comparison, was far smaller at 5.5 million unliquidated entries.  *In re Section 301 Cases*, No. 21-00052, ECF 393-1 ¶ 4.  Then, CBP estimated that "it would require over 40 Import or Entry Specialists at the Centers of Excellence and Expertise (Centers) working full time" to suspend liquidation.  *Id.* ¶ 6. And CBP explained that such diversion of resources would significantly delay every other function of the Centers, including "combatting transshipment and ensuring that duties are properly assessed and entries are timely liquidated; conducting Enforce and Protect Act investigations; instituting civil penalties and referring appropriate matters to Homeland Security Investigations; reviewing prior disclosures; conducting free trade agreement verifications; discretionary targeting efforts; and processing the dramatic increase in protests filed in the last year." *Id.* ¶ 8.

The diversion of resources would be even more crushing now given the significantly higher number of unliquidated entries, and particularly given the current lapse in appropriations for the Department of Homeland Security.  The cascading effect of such injunctions threatens the precise harm detailed in the CBP declaration.  *See also, e.g.*, *Winter*, 555 U.S. at 24 (cautioning courts to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction"); *Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir. 1991) (considering the aggregate harm of additional injunctions in similar cases).

Plaintiff attempts to distinguish its case from already filed cases based on the Supreme

8

Court's recent decision in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026), including the consolidated *V.O.S.* and *Oregon* cases. The next steps in *V.O.S.* will involve discussion with counsel for the plaintiffs and with representatives of plaintiffs in the more than 1500 stayed cases who make similar challenges. An injunction against liquidation in this case (and potentially in similar cases) would therefore be premature.

The Government is still considering next steps in light of the Supreme Court's opinion, including the mechanics and scope of refunds, potential settlements, and case management, which should be unsurprising given the magnitude of the issue and the impact on Government operations. *Cf. Learning Resources*, 2026 WL 477534, at *51 (Kavanaugh, J., dissenting) ("[T]he refund process is likely to be a 'mess.'"). There are thousands of lawsuits challenging the tariffs under IEEPA and some sort of case management procedure, as well as individual assessment of claims, will be necessary. Plaintiff gives no persuasive reason they should receive special treatment.

Finally, it would be inequitable to require CBP to act immediately when Plaintiff waited until this very late hour to seek emergency relief. Plaintiff alleges it has been importing goods subject to IEEPA-based tariffs for about 12 months. According to Plaintiff, its formal entries may have begun to liquidate as of December 15, 2025 (an allegation for which Plaintiff provides no specific evidentiary support such as specific entries). Yet Plaintiff waited until over two months after that date to request emergency relief, even though other importers filed suit and raised liquidation issues months ago. *See, e.g.*, *V.O.S. Selections*, No. 25-066; *Oregon*, No. 25-077; *Princess Awesome*, No. 25-078; *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-255. Plaintiff's delay here underscores the lack of any need for emergency relief. *See Benisek v. Lamone*, 585 U.S. 155, 159 (2018) ("[A] party requesting a preliminary injunction

must generally show reasonable diligence."); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024) (concluding that plaintiffs' delay "support[s] denying a preliminary injunction").  Despite its delay, Plaintiff seeks to circumvent the processes that the Chief Judge of this Court put into place last year.  Administrative Order 25-02 requires that all cases challenging IEEPA-based tariffs be stayed unless good cause is shown.  Nothing in its filing establishes such good cause.[2]

**CONCLUSION**

For these reasons, the Court should deny Plaintiff's motion for a temporary restraining order and preliminary injunction.

DATED: March 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

---

[2] Plaintiff's filing of a plainly deficient motion for an ex parte temporary restraining order further weighs against its side in the equities.  Plaintiff's motion acknowledges that "a temporary restraining order without written or oral notice to the adverse party" requires "specific facts in an affidavit or verified complaint."  ECF No. 3 at 5 (quoting Fed. R. Civ. P. 65(b)(1)(A)-(B)).  But Plaintiff did not file an affidavit or verified complaint.  Nothing in its submission authenticates the two exhibits attached to its complaint and memorandum.  Plaintiff's motion also made the dubious assertion that "[n]otice [to Defendants of its motion] is impracticable because . . . no counsel for Defendant is presently known."  ECF No. 3 at 8.  At the same time, however, the information statement that Plaintiff filed in opening its case identifies two cases it says are related, ECF No. 4, and both dockets identify counsel for Defendants.

U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,672 words, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Claudia Burke