Plaintiffs' Response in Opposition to Defendants' Motion
for a Stay of Enforcement of Judgment Pending Appeal

# Exhibit D

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

|  |  |
|---|---|
| ATMUS FILTRATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; AND RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection <br><br> Defendants. | Court No. 26-01259 |

**DECLARATION OF BRANDON LORD**

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022. In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act. I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual Property

Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

**FRAMEWORK FOR ENTRY AND LIQUIDATION**

2. In general, in accordance with the applicable statutory and regulatory legal framework, importers are required to deposit estimated duties on each entry of imported merchandise at the time the merchandise is entered into the United States or shortly thereafter. Thereafter, CBP is required to "liquidate" each entry, which entails fixing the final amount of duty owed. If CBP does not liquidate an entry within one year of entry (with certain prescribed exceptions), it will liquidate by operation of law at the rate and amount of duties asserted by the importer at the time of entry; this is referred to as "deemed liquidation." To mitigate the risk of deemed liquidation, which may result in an underpayment of duties, taxes and fees lawfully owed for the entry, since the entry will liquidate at the rate of duty, value, quantity, and amount of duties asserted by the importer of record without any verification by CBP, CBP's Automated Commercial Environment (ACE) – the system of record for imported merchandise – is programmed to automatically liquidate entries 314 days after the date of entry into the United States, unless liquidation is extended or suspended in accordance with law, or a CBP user manually removes the entry from this automated process. Given the volume of entries made each year, CBP is unable to affirmatively review and liquidate each entry, and the majority of entries automatically liquidate. After an entry is liquidated, CBP has the statutory authority to reliquidate the entry within 90 days of the original liquidation to fix any errors in the liquidation.

2

3. In general, upon liquidation or reliquidation, CBP is required to collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.

4. CBP's system for processing and liquidating entries is ACE.  ACE is the system through which the trade community submits required data regarding imports and exports to CBP and its partner federal government agencies.  ACE is CBP's system of record for the collection and refund, as appropriate, of estimated or assessed duty for imported merchandise, which includes the ACE Entry Summary module, for processing entry summaries to assess duties on the merchandise, and the ACE Collections module, for processing the collection and refund (as appropriate) of duties or estimated duty deposits associated with the entry summaries in the ACE Entry Summary module.

5. ACE contains multiple applications with different functionalities that are designed to account for critical processes.  These processes are intentionally handled by different personnel categories within CBP to ensure that statutory and regulatory requirements are met and that all duties, taxes, and fees have been paid.  ACE is further designed to implement various system controls and validations to ensure that the Agency fulfills its mandate to protect the revenue while also protecting national security and processing lawful international trade.

6. The majority of import entries are filed electronically using ACE, although a small number of entries are still filed using paper forms.  For entries filed using paper, CBP manually inputs the data into ACE.  Accordingly, ACE contains all import entry records, whether the entry was originally filed using ACE or paper forms.  No duty calculation adjustments or refunds are performed in paper format – only electronically in ACE.

7. Importers declare the duties owed for imported merchandise on Entry Summary lines in the entry covering the merchandise. This is in accordance with the applicable legal framework for the entry of imported merchandise, including CBP's instructions for the Entry Summary Form 7501, which apply to entries filed in ACE as well as on paper. Entries often have multiple Entry Summary lines, generally averaging approximately 20.5 Entry Summary lines per entry. An Entry Summary line covers a commodity from one country, and includes the quantity, entered value, relevant Harmonized Tariff Schedule of the United States (HTSUS) provisions, and all charges, rate(s) of duty, and tax applicable to such merchandise.

8. For each Entry Summary line, importers must report all applicable HTSUS provisions. This means that, in addition to including the Chapter 1-97 regular duty rate classification, importers must also report any applicable Chapter 99 provisions for any additional duties owed, including IEEPA duties, and those imposed pursuant to Section 232 of the Trade Expansion Act of 1962 and/or Sections 201 and/or 301 of the Trade Act of 1974, or applicable exclusions from these additional duties, as well as any applicable antidumping or countervailing duties (AD/CVD) or duty deposits owed. Therefore, if multiple HTSUS provisions apply to the imported merchandise that is reported on a given Entry Summary line, all such HTSUS provisions are reported on the same line, and all associated duties are deposited together for the merchandise covered by a particular Entry Summary line.

9. For AD/CVD duties, CBP administers orders and instructions from the Department of Commerce ("Commerce") related to such duties. Generally, importers are required to declare that their merchandise is subject to AD/CVD, and the liquidation of AD/CVD entries is automatically suspended in ACE until CBP receives AD/CVD liquidation instructions from Commerce. When CBP receives AD/CVD liquidation instructions

4

from Commerce, CBP must liquidate such entries within six months after receiving the notice of removal of the suspension or otherwise the entries will be liquidated by operation of law at the rate and amount of duty asserted by the importer. Given the volume and complexity of AD/CVD instructions that CBP is required to process – for example, in fiscal year 2025, CBP reviewed and processed over 2,264 separate Commerce AD/CVD instructions – it is often the case that entries subject to AD/CVD are processed and finalized for liquidation close to the expiration of the six-month deadline.

10. If it is determined upon liquidation or reliquidation that excess moneys have been deposited, such that a refund with interest is due to the importer, CBP certifies the refund and interest amounts to the Department of the Treasury, which then employs its own processes to disburse the certified amounts to the importers of record.

**THE COURT OF INTERNATIONAL TRADE'S**
**MARCH 5, 2026, AMENDED ORDER**

11. For the reasons explained below, CBP is not able to comply with the Court of International Trade's order of March 4, 2026, "that, with respect to any and all unliquidated entries that were entered subject to the IEEPA duties, U.S. Customs and Border Protection [must] liquidate those entries without regard to the IEEPA duties," and that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." Although this declaration was prepared based on the Court's March 4, 2026 order, the same considerations apply with regard to the Court's amended order of March 5, 2026, which ordered that "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026), U.S. Customs and Border Protection [must] liquidate those entries without regard to the IEEPA

5

duties," and that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties."

12. As of March 4, 2026, over 330,000 importers have made a total of over 53 million entries in which they have deposited or paid duties imposed pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq. (the "subject entries"). As of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. Approximately 20.1 million entries remain unliquidated as of March 4, 2026.

13. Currently, it is not possible for CBP to immediately prevent any additional entries from liquidating without IEEPA duties. CBP automatically liquidates formal entries in ACE each Friday, starting at 02:00 AM ET. This liquidation process in ACE runs several hours during the middle of the night so as not to slow down international cargo processing. Over 700,000 entries were scheduled to liquidate at 2:00 AM ET Friday, March 6, 2026, of which CBP identified approximately 339,000 entries that include IEEPA duties. Approximately 333,000 additional entries that include IEEPA duties are scheduled to liquidate at 2:00 AM ET Friday, March 13, 2026.

14. To stop the liquidation of formal entries with IEEPA duties that are already scheduled to liquidate, CBP would need to manually extend the liquidation date or would need to reprogram ACE to stop the liquidation of all entries scheduled to liquidate. CBP does not have the capability of separating out which entries scheduled to liquidate are subject to IEEPA duties from those that are not for purposes of stopping the liquidation process in ACE that is scheduled to run at 2:00 AM ET Friday, March 6, 2026. However, if CBP were to stop the scheduled liquidation of all the more than 700,000 entries, then some of those entries (approximately 1,000) would miss their liquidation deadline, and

would be liquidated by operation of law at the rate and amount of duty asserted by the importer of record (see paragraph 9 above), which in some cases may be contrary to AD/CVD liquidation instructions or other provisions of law.

15. In addition to formal entries, there are also informal entries filed pursuant to the special entry procedures provided in subpart C of part 143 of the Customs Regulations in Title 19 of the Code of Federal Regulations.  Informal entries liquidate immediately upon the importer paying the duties due on the entry.  19 C.F.R. § 159.10(a)(1).  Of the 53,173,939 entries filed with IEEPA duties, 33,730,325 or 63% are informal entries.  Although CBP stopped accepting IEEPA duty deposits for informal entries on February 24, 2026, there are around 4 million informal entries that were filed before February 24, 2026, that have not yet liquidated.  Many of these entries will automatically liquidate on March 16, 2026, when importers pay their March Periodic Monthly Statement.  CBP does not have a process to prevent the liquidation of informal entries.

16.     CBP has also identified over 15 million entries that liquidated with IEEPA duties on or before December 4, 2025, meaning that they were beyond CBP's 90-day voluntary reliquidation period at the time of the Court's March 4, 2026 order.  However, for approximately 63,059 of these entries, the 90-day period expired on March 4, 2026.  For an additional approximately 75,614 entries, the 90-day period will expire on March 12, 2026, the day before the next scheduled liquidation/reliquidation date of next Friday, March 13, 2026.

### USING CBP'S EXISTING CAPABILITIES
### TO PROCESS IEEPA DUTY REFUNDS

17. In light of the Court's March 5, 2026 amended order, CBP is now facing an unprecedented volume of refunds. Its existing administrative procedures and technology

are not well suited to a task of this scale and will require manual work that will prevent personnel from fully carrying out the agency's trade enforcement mission. Personnel would be redirected from responsibilities that serve to mitigate imminent threats to national security and economic security. Those activities include, but are not limited to, detecting and disrupting transshipped goods, protecting against free trade agreement abuse, and detecting AD/CVD evasion all of which are illicit actions that threaten U.S. domestic industry.

18. Although CBP's instructions for the Entry Summary Form 7501 direct importers to breakout the applicable duties for each HTSUS classification that is declared for the same merchandise on the same Entry Summary line (to include Chapter 99 numbers), importers frequently combine all applicable duties into the Chapter 1-97 HTSUS classification. As a result, for some entries, the Entry Summary records do not clearly reflect the precise amount of duties that were deposited specifically for IEEPA HTSUS provisions and not for any other HTSUS provision that is also applicable to the same merchandise on the same Entry Summary line. Because importers have flexibility in reporting applicable duties at the Entry Summary line level and the deposit of duties is accepted at the Entry Summary level, isolating the IEEPA duties from the other duties deposited for the Entry Summary requires manual calculations by CBP personnel who must then manually update each individual Entry Summary line to remove the IEEPA tariff to ensure correct duty amounts are applied. Only then would ACE be able to reassess the proper duty owed and issue a refund of the IEEPA duties paid.

19. Currently, ACE can support large scale uniform changes of the same data element(s) across a group of Entry Summaries. However, current system limitations allow CBP to process a maximum of 10,000 Entry Summary lines in one submission. Additionally, the

mass processing function requires CBP personnel to manually compile Excel spreadsheets that identify batches of subject entries. To mass process the removal of the hundreds of HTSUS numbers for IEEPA duties from entries, CBP would need to manually execute approximately 170,000 mass update actions to cover the 1,684,648,252 Entry Summary lines that need to be updated. Additionally, it is not uncommon for this mass processing operation to kick out (or fail to process) entries with anomalies that need to be individually evaluated and addressed, adding an unquantifiable amount of time given the unprecedented magnitude of this effort.

20. In addition to refunding the IEEPA duties, CBP must also pay importers interest, as required by law. Although ACE can automatically calculate interest payments in certain circumstances, there are other circumstances where interest must be manually calculated by CBP personnel. These circumstances include Entry Summaries for which duty deposits and/or non-IEEPA refunds were made on multiple dates, resulting in multiple collection records for the Entry Summary, such as when an importer submits a correction after making its initial estimated duty deposit, which results in a supplemental duty deposit.

21. The current system requires refunds be certified for accuracy by personnel from both CBP's Office of Field Operations and Office of Finance, separately, before submission to the Department of the Treasury for issuance. Assuming each Entry Summary with IEEPA tariffs is entitled to a refund, then 53,173,939 refunds would need to go through this process. There is no workaround in ACE that would allow this process to be circumvented.

22. CBP published the Interim Final Rule (IFR) Electronic Refunds (91 FR 21), stating that effective February 6, 2026, CBP will issue all refunds electronically. Yet, many

importers have not taken the necessary steps to receive refunds electronically. Pursuant to the IFR, all CBP refunds have been electronic as of February 6, 2026. There are 330,566 importers who have paid IEEPA duties or duty deposits. While CBP has issued numerous communications regarding the new rule, only 21,423 entities (mostly importers or their customs brokers) have completed the set-up process to receive their refunds electronically. Until importers complete the process to receive refunds electronically, the refunds will be rejected. Since February 6, 2026, CBP has been unable to process 7,700 refunds for 2,897 importers because those importers had not completed the necessary steps to receive refunds electronically.

23. CBP's Import Specialists (IS) and Entry Specialists (ES) are responsible for the processing of all entries of imported merchandise and related corrections, enforcement actions, and administrative protests. For example, CBP Entry Specialists are required by law or policy to perform approximately 20 separate functions daily related to entry processing, revenue protection and enforcement, as well as approximately 15 additional functions weekly, and approximately 10 additional functions monthly.

24. Once the review of an entry is complete and any manual duty calculations completed (see paragraph 18 above), it takes an IS or ES approximately 5 minutes to process an individual refund, including amending, liquidating and certifying the refund for each entry. The refund processing for the 53,173,939 entries with IEEPA duties will require 4,431,161 man hours for CBP to complete.

25. It is not feasible for CBP to divert all IS and ES personnel to processing IEEPA duty refunds on a full-time basis with no time off. If CBP's IS and ES personnel were diverted to focus full-time on processing IEEPA duty refunds for the millions of entries and Entry Summary lines on which IEEPA duties have been paid, CBP's other functions

10

and responsibilities would be severely disrupted and the agency would not be able to continue to adequately perform its mission, including its revenue protection mandate and its vital national security functions.

26.  CBP has never been ordered to, nor has it attempted to, process a volume of refunds anywhere near the volume of total entries and Entry Summary lines on which IEEPA duties have been deposited.  However, where CBP's predecessor, the U.S. Customs Service, was previously ordered to refund to exporters the Harbor Maintenance Fee (HMF) that was held to have been unconstitutionally imposed as applied to exports by the Supreme Court in *United States Shoe Corporation v. United States* (1998), the process took several years to complete and required an updated regulatory procedure.

### DEVELOPMENT OF NEW FUNCTIONALITY IN ACE

27. CBP has a history of developing effective processes to meet its legal responsibilities and operational needs that also provide efficiencies for industry, and we continue to do so now.  In preparing for the potential need to refund IEEPA duties, CBP has considered how to implement a process to issue IEEPA duty refunds in a more efficient manner than the above-described, currently available processes.  CBP is confident that it can develop and implement new ACE functionality that will streamline and consolidate refunds and interest payments on an importer basis, rather than issuing 53,173,939 separate entry-specific refunds with multiple payments going to the same importer.   Though operational, legal, and technical considerations may require alterations or modifications, CBP anticipates that the process will involve the following steps:

- The importer files a declaration in ACE that includes a list of entries on which IEEPA duties were paid.

- ACE runs a series of validations on each entry within the declaration and

11

automatically re-calculates the duty owed without the IEEPA tariffs (with applicable interest).

- CBP verifies the declaration and processes refunds as soon as practicable.

- ACE automatically finalizes (liquidates or reliquidates) the entries.

- ACE automatically aggregates the refunds with interest by importer and liquidation date.

- CBP certifies the refunds.

- The Department of the Treasury issues IEEPA refunds electronically.

28. CBP estimates that the automated controls described above will save CBP over 4 million hours compared with the manual processes it would otherwise have to complete.

29. CBP is making all possible efforts to have this new ACE functionality ready for use in 45 days. This new process will require minimal submission from importers. It will also minimize errors by ensuring accurate IEEPA refund calculations through system validations and allowing for a review period for CBP to resolve any discrepancies with the importer and to confirm no other outstanding enforcement issues or no revenue is owed. The process will be simpler and more efficient than the existing functionalities, and CBP will provide guidance on how to file to refund declarations in the new system.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 6th day of March, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection