Plaintiffs' Response in Opposition to Defendants' Motion
for a Stay of Enforcement of Judgment Pending Appeal

# Exhibit E

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| ATMUS FILTRATION, INC., <br><br>         Plaintiff, <br><br>   v. <br><br> UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, <br><br>         Defendants. | Court No. 26-01259 |

**DECLARATION OF BRANDON LORD**
**RESPONDING TO MARCH 20, 2026 COURT ORDER**

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA).   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2. CBP is developing a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to prepare to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA. This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE). CBP is designing CAPE with four integrated components:

- Claim Portal,

- Mass Processing,

- Review and Liquidation/Reliquidation, and

- Refund

Please refer to my declaration filed March 12, 2026 (ECF 39), for a description of each component. The status of CBP's development for each component is discussed below.

## CLAIM PORTAL

3. As of March 30, 2026, CBP estimates that its development of the Claim Portal component is 85% complete.

4. Since my last declaration on March 19, 2026 (ECF 47), CBP has completed the majority of core development for the Claim Portal component and continues to conduct critical testing to identify and address any development or programming issues.

## MASS PROCESSING

5. As of March 30, 2026, CBP estimates that its development of the Mass Processing component is 60% complete.

6. Since my last declaration on March 19, 2026, CBP has significantly developed capabilities necessary to process entry summaries identified on a CAPE Declaration in the Mass Processing component.  These capabilities include the ability for CBP to review and adjudicate a CAPE Declaration, and the ability to modify entry summaries, as required.  CBP continues to enhance the history tracking function, described in my previous declaration.  CBP is also finalizing development of the ACE validations described in my declarations dated March 12 and 19, 2026.

## MASS PROCESSING—REVISED PARAMETERS

7. To ensure compliance with the Court's amended order dated March 20, 2026, CBP revised the development of CAPE Phase 1 to limit the processing of entries to those that are either unliquidated or for which the 90-day voluntary reliquidation period under 19 U.S.C. § 1501 has not expired.  On March 27, 2026, the Court further amended its order to provide that "[a]ny liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties."  In order to meet the timeline for Phase 1 deployment set forth in my declaration of March 6, 2026 (ECF 31), CBP must continue developing Phase 1 of CAPE without the inclusion of finally liquidated entries. Accordingly, Phase 1 will only process unliquidated entries and entries within the 90-day voluntary reliquidation period, subject to the conditions set forth in paragraphs 14 and 15 of this declaration.  As I explain in paragraph 16 below, CBP intends to expand CAPE to process finally liquidated entries in a subsequent phase of development.

3

8.   CBP estimates that, subject to the limitations set forth in paragraph 7, Phase 1 of CAPE will be capable of processing approximately 63% of entries for which IEEPA duties were paid or have been deposited.  This percentage includes unliquidated entries and entries within the 90-day voluntary reliquidation period set forth in 19 U.S.C. § 1501.

**REVIEW AND LIQUIDATION/RELIQUIDATION**

9.   As of March 30, 2026, CBP estimates that its development of the Review and Liquidation/Reliquidation component is 80% complete.  CBP continues to test the liquidation/reliquidation function of this component using various scenarios that may be presented by entry summaries identified on a CAPE Declaration.  The remainder of the development and testing for this component is dependent on the development of other CAPE components.

**REFUND**

10. As of March 30, 2026, CBP estimates that its development of the Refund component is 75% complete.  Since my last declaration on March 19, 2026, CBP has completed the majority of the development of the Refund component required for Phase 1 of CAPE, and the agency's focus in this component has shifted to the critical testing required before deployment to ACE. In the coming weeks, CBP will continue the critical testing, identifying and addressing any issues revealed by the testing, and expanding that testing as necessary.

11. CBP's systems are designed to allow refunds to be issued to the importer of record (IOR) or a party the IOR has designated to receive refunds on its behalf on a CBP Form 4811. On March 25, 2025, President Trump issued Executive Order 14247, *Modernizing*

4

*Payments To and From America's Bank Account*, 90 Fed. Reg. 14,001 (Mar. 25, 2025), mandating the transition from paper checks to electronic payments for all Federal disbursements and receipts by digitizing payments to the extent permissible under applicable law, with limited exceptions and accommodations when electronic payment methods are not feasible.  As noted in my March 6, 2026 declaration, on January 2, 2026, CBP published in the Federal Register an Interim Final Rule (IFR) providing that, effective February 6, 2026, CBP will issue refunds electronically, as required by Executive Order 14247.  The IFR explains that Section 3332(f)(1) of title 31 of the United States Code (31 U.S.C. § 3332(f)(1)) generally mandates that all Federal payments made by the government, other than payments made under the Internal Revenue Code of 1986, be made by electronic funds transfer.  It further explains that the definition of "Federal payments" in 31 U.S.C. § 3332(j)(3) is inclusive of refunds such as those issued by CBP, although the requirement for electronic funds transfers may be waived in cases where compliance imposes a hardship or in other circumstances as may be necessary.  Consistent with this statutory authority and the Executive Order, the IFR provides that all CBP refunds have been electronic as of February 6, 2026.

12.  CBP continues to issue messaging to the trade community to inform it of the new electronic refund requirement and provide information about how to complete the process to receive electronic refunds.

13. As of March 26, 2026, 26,664 IORs have completed the process to receive electronic refunds, and additional entities continue to complete the process daily.  These 26,664 IORs filed 78% of entries for which IEEPA duty payments and/or duty deposits have been paid.  The principal amount of IEEPA duty payments and/or duty deposits for these entries is approximately $120 billion.

**PHASE ONE OF CAPE DEVELOPMENT**

14. In my March 12, 2026 declaration I explained that CBP anticipated a phased development of CAPE and outlined the anticipated scope and functionality of Phase 1 of CAPE.  Since that declaration, CBP has been able to expand the scope and functionality of Phase 1 of CAPE as follows:

    a.  CAPE Phase 1 will now accept CAPE Declarations containing entries for which the liquidation status is "Suspended," "Extended," or "Under Review." The Mass Processing component of CAPE will update these entries by removing the Harmonized Tariff Schedule of the United States (HTS) code requiring IEEPA duties and will recalculate the duties owed without IEEPA duties.  However, CAPE will not liquidate or process the refund of the IEEPA duties on these entries, which will be liquidated (without IEEPA duties) in the normal course, and the IEEPA duties will be refunded upon liquidation. Entries subject to antidumping and/or countervailing duties (AD/CVD) are included in this scenario if their liquidation is suspended pending instructions from the U.S. Department of Commerce (DOC).  Entries subject to AD/CVD will be accepted on a CAPE Declaration and the IEEPA duties will be removed, but CBP will not liquidate or process the refund of the IEEPA duties until it receives instructions from DOC to lift the suspension and liquidate the entries.

    b.  CAPE Phase 1 will now also accept CAPE Declarations containing warehouse and warehouse withdrawal entries.  CAPE will remove the IEEPA HTS codes for warehouse and warehouse withdrawal entries, but will not liquidate or

6

process the refund of the IEEPA duties on these entries.  Instead, the liquidation process for warehouse entries will continue to be performed by CBP in the normal course after all withdrawals have been made and the warehouse entry is ready for liquidation, at which time CBP will process the refund of IEEPA duties.

CBP does not expect the expansions outlined above to delay its delivery of Phase 1 of CAPE.

15. In addition, further clarifications to my March 12, 2026 declaration are as follows:

    a. The following categories of entries subject to IEEPA duties will <u>not</u> be accepted on a CAPE Declaration in Phase 1:

- Entries that have been flagged for reconciliation, as well as Entry Type 09 – Reconciliation Summary;

- Entries designated on a drawback claim;

- Entries covered by an open protest;

- Entries not filed in ACE, and entries without a liquidation status in ACE; and

- Entries subject to AD/CVD, for which DOC has issued liquidation instructions, that are pending liquidation in accordance with 19 U.S.C. § 1504(d).

    b. CBP will take up to 45 days from its acceptance of a CAPE Declaration to review and liquidate the validated entry summaries identified on the CAPE Declaration, unless there is a compliance concern necessitating further review.

    c. CAPE Phase 1 will accept CAPE Declarations containing entries liquidated within the preceding 80 days to ensure that processing is complete and the

entries are reliquidated by the 90th day to meet the agency's legal timeframe for voluntary reliquidation pursuant to 19 U.S.C. § 1501.

## DEVELOPMENT OF SUBSEQUENT PHASES OF CAPE

16. CBP continues to identify and evaluate more complex refund scenarios and determine what additional CAPE capabilities are necessary to address those scenarios. At this time, CBP expects to develop the following functionalities in subsequent phases of CAPE:

   a. Enhanced tools and validations to ensure compliance, facilitate entry summary processing, and expedite CBP's review process;

   b. Enhanced financial reporting and security tools;

   c. Tools to further streamline revenue enforcement in situations in which there is an outstanding bill for non-IEEPA duties associated with an entry included on a CAPE Declaration;

   d. The capability to process entries flagged for reconciliation and entries designated on drawback claims, which pose an enhanced risk of over-refunding the duties;

   e. The capability to process complex interest calculations related to multiple collection dates on a single entry summary included on a CAPE Declaration;

   f. The capability to process entries for which liquidation is final; and

   g. The capability to process non-Automated Broker Interface entries where no entry summary lines exist.

17. CBP will provide additional information about how it intends to address these scenarios. CBP will also provide guidance regarding the scope and functionality of the subsequent phases of CAPE as they are developed and implemented.

8

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 30th day of March, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection